UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

MEDI BIOTECH, LLC, a Florida Limited            Case No.:_____
Liability Company and NATIONAL
HEALTHCARE SERVICES, LLC, a Florida
Limited Liability Company,

    Plaintiff,

vs.

MAIN AVENUE PHARMACY, INC., a New
Jersey Corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiffs MEDI BIOTECH, LLC, a Florida Limited Liability Company ("Medi BioTech") and NATIONAL HEALTHCARE SERVICES, LLC, a Florida Limited Liability Company ("National") sues Defendant MAIN AVENUE PHARMACY, INC., a New Jersey Corporation ("Main Avenue"), and alleges as follows:

### Parties

1. Medi Biotech is a Florida Limited Liability Company which at all times hereto maintained its principal place of business in Boca Raton, Palm Beach County, Florida.

2. National is a Florida Limited Liability Company which at all times hereto maintained its principal place of business in Boca Raton, Palm Beach County, Florida.

3. Defendant Main Avenue is a New Jersey corporation which at all times material hereto maintained its principal place of business in Clifton, New Jersey.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. 1332(a) as there is complete diversity between Plaintiffs and Defendant, and Plaintiff seeks damages in excess of $75,000.00.

5. This Court is the proper venue pursuant to 28 U.S.C. § 1391(B)(2) in that a substantial part of the events and/or omissions giving use to Plaintiffs' claims occurred in this District.

**Factual Allegations as to All Counts**
**And First Agreement**

6. Medi Biotech is a marketing company that specializes in telemarketing and other forms of marketing in the healthcare industry including, but not limited to, the marketing of compound medications and related products.

7. National is a marketing company that specializes in telemarketing and other forms of marketing in the healthcare industry including, but not limited to, the marketing of compound medications and related products.

8. Main Avenue is a retail and compound pharmacy with its principal place of business in Clifton, New Jersey, and is a wholly owned subsidiary of ScripsAmerica, Inc. ("Scrips"), a penny stock public company. Main Avenue's business is primarily focused in the area of the sale of compounding medications.

9. Main Avenue sells its compound pharmaceuticals and related products to patients in states in which it is licensed, including patients who reside in Florida. Main Avenue further solicits prospective customers in Florida and through its sales to Florida residents, generates substantial revenues from Florida and is engaged in continuous and not isolated business transactions in the State of Florida.

10. Main Avenue is licensed in Florida as a pharmacy with license no. PH2703 and has been licensed since November 6, 2013.

11. Main Avenue entered into contracts in Florida with the Plaintiff Medi Biotech, which required payment in Florida, which contracts were breached by Defendant.

12. Main Avenue sent corporate representatives to Florida in 2015 to meet with a representative of Medi Biotech related to the agreements which are the subject of this Complaint, and as to business transactions with Medi Biotech.

### First Agreements

13. Medi Biotech and Main Avenue entered into two separate marketing arrangements to market Main Avenue's compound medications and related products to prospective patients.

14. Main Avenue initially engaged Medi Biotech in early 2014 and each month thereafter through March 2016 pursuant to at will oral agreements where Medi Biotech would market through telemarketing and other means Main Avenue's compound medications and related products.

15. Medi Biotech agreed through its marketing efforts to provide prospective patients to Main Avenue which patients had expressed a need for pain, wound and other compound medications and other related products sold by Main Avenue, and Main Avenue agreed to pay Medi Biotech 70% of the gross adjudicated amount received from their sale of compound medications received by it from Pharmacy Benefit Managers ("PBM's") for said patients. For products other than compound medications, Main Avenue agreed to pay Medi Biotech 70% of the gross amount less the costs of goods.

16. Medi Biotech did in fact market for Main Avenue compound medications and other products and throughout 2014, 2015, and 2016 and generated for Main Avenue millions of dollars of revenues.

17. Main Avenue was granted access to all of the necessary data to process, and fill compound medications to patients via Medi Biotech's internal server, which was utilized to protect patient protected health information ("PHI") under Health Insurance Portability and Accountability Act of 1996 (HIPPA), and other applicable laws.

18. Main Avenue communicated to Medi Biotech the amount of revenues it received from the adjudication of compound medications through Medi Biotech's marketing efforts by providing to Medi Biotech bi-monthly "Facility Reports," which reports provided information such as patients' name, prescriptions, quantity, prescriber, amount paid by the various PBM's, identity of insurance company making payment and amount co-payment due from patient. Main Avenue also created Excel spread sheets showing the total commissions due Medi Biotech that were provided with the Facility Reports. Medi Biotech relied upon the truthfulness of Main Avenue's representations as to the amount of compensation due to it for its marketing services.

19. Commencing in early 2014 and continuing through March 11, 2016, Medi Biotech provided prospective patients to Main Avenue for which Main Avenue agreed to pay the 70% marketing fee twice each month.

20. Main Avenue paid to Medi Biotech the agreed upon compensation, at least according to Main Avenue's own Facility Reports and commission statements through March 5, 2016, although Main Avenue had a history of paying late and at times sought payment terms inconsistent with the parties' agreement claiming it had cash flow problems.

## Second Agreement

21.     In or about October 2015, Medi Biotech and Defendant entered into second at will oral agreements wherein Medi Biotech agreed it would additionally market directly or indirectly to physicians for Main Avenue's products including compound medications.

22.     In order to provide the marketing services to Main Avenue, Medi Biotech established a relationship with a sales representative to market to physicians who would prescribe compound medications and other products of Main Avenue for personal injury and for workmen's compensation patients. Main Avenue was aware of and agreed that Medi Biotech would market its products through an independent sales representative.

23.     In reliance upon Main Avenue's agreement, National, a company affiliated with Medi Biotech entered into an Independent Contractor Marketing Agreement ("Bon Mar Agreement") with Bon Mar Consultants, Inc. ("Bon Mar"). Bon Mar agreed to market Main Avenue's products to physicians and was compensated by National.

24.     Medi Biotech paid the costs and expenses owed to Bon Mar to National for Bon Mar's services under the Bon Mar Agreement.

25.     Main Avenue agreed to compensate Medi Biotech in a similar fashion as under the first agreement by paying to it 70% of the adjudicated amount received from PBM's for compound medications whose patients were originated by Medi Biotech and/or Bon Mar. Main Avenue also agreed to compensate Main Avenue 70% of the adjudicated amount for other products sold by it with a deduction for out of pocket costs.

26.     Main Avenue supplied a similar Facility Report and Compensation Calculation for personal injury and workmen's compensation marketing to Medi Biotech, as it did under the first agreement.

27. The first payment made to Medi Biotech for marketing services related to personal injury and workmen's compensation was on March 30, 2016, but did not include the full amount due.

28. Bon Mar agreed pursuant to Independent Contractor Agreement with National agreed that it would not compile a list of leads or customers of National except for the benefit of National.

**<u>Main Avenue's Termination of Both Agreements and
Unlawful Conduct Subsequent to Termination</u>**

29. On March 11, 2016, Main Avenue by correspondence to Medi Biotech stated they were terminating its relationship with Medi Biotech. Main Avenue in its termination letter made the contention that its National Provider Number ("NPI") was used over the past several days without the authority of Main Avenue to improperly "test" potential patients to be submitted to a PBM. Main Avenue claimed that the improper actions were traced back to Medi Biotech's company and its software. Upon investigation, it was discovered that Main Avenue's claims may have had some merit except Medi Biotech was not the party responsible for the claimed misconduct rather a third party with no authority for this conduct from either Main Avenue or Medi Biotech was responsible for this conduct. Main Avenue even after this discovery would not retract the termination. Upon information and belief, Main Avenue suffered no damage because of the short lived use of its National Provider Number and no medications were delivered.

30. Since Main Avenue terminated the relationship and contract with Medi Biotech, it thereafter had no right to access Medi Biotech's computer server.

31. Nevertheless, on March 14, 2016 Main Avenue unlawfully and without the consent of Medi Biotech, accessed Medi Biotech's computer via a portal, and upon information

and belief, transferred to itself all of the proprietary data of Medi Biotech to allow it to continue to process compound medications that it had not been filled as of the date of Main Avenue's unilateral termination of the contract and relationship with Medi Biotech.  Main Avenue subsequent to termination continued to fill compound medications and sell other products to patients generated by Medi Biotech marketing efforts and continues to do including filling refills for these patients, but without compensating Medi Biotech as had been agreed, thereby allowing it to retain 100% of the revenues.

32. After the unilateral termination of the Marketing Agreement for personal injury and workmen's compensation patients, Main Avenue through Adam Brosius, President and a Director of ScripsAmerica, the parent company of Main Avenue approached Bon Mar Consultants, Inc. by contacting its President Seth Leist and offered to compensate he and his company directly representing that Main Avenue was no longer going to pay Medi Biotech, but instead would pay him directly for the customers and leads developed by National for Medi Biotech that were provided to Main Avenue through Medi Biotech.

33. Demand was made to Main Avenue and Adam Brosius that they cease tortious interference with Bon Mar and Seth Leist business relationship and contract with Medi Biotech's customers and leads  This demand was ignored and in fact, Main Avenue became more aggressive in attempting to persuade Bon Mar and Seth Leist to dissociate from Medi Biotech and instead market directly for Main Avenue, inviting Seth Leist to a face to face meeting with Adam Brosius.

34. After  March 11, 2016, Adam Brosius represented that Main Avenue would make payment to Medi Biotech and provide additional facility reports for all of the patients that Main

7

Avenue derived through Medi Biotech's marketing including those derived from Bon Mar, however, no payment was made and no facility reports were provided.

35. That for the time period of February 16, 2016 to February 29, 2016 according to the records of Main Avenue, Medi Biotech provided patients with adjudicated medications paid for by PBM's to Main Avenue in the amount of $698,018.48 of when Medi Biotech is entitled to payment of $488,612.93 due on March 20, 2016.

36. That for the time period for November 2015 to date of this Complaint, Main Avenue received revenues from adjudicated medications from personal injury and workmen's compensation of which approximately $84,000.00 is currently due.

37. There is additionally in excess of $2,000,000.00 in pending payments are due to Main Avenue that are the subject of the second agreement between Main Avenue and Medi Biotech of which Medi Biotech is owed approximately 1.4 million for personal injury and compensation business.

38. Upon information and belief, Main Avenue has processed and continues to process medications and other products and will do so for products encompassed by the first agreement between Medi Biotech and Main Avenue subsequent to Main Avenue's unilateral termination of the agreement and will receive revenues in excess of $4,000,000 of which Medi Biotech will be owed $2,800,000.00.

<u>**Count I**</u>
**Breach of Contract – Medi Biotech (Contract 1)**

39. Medi Biotech incorporates and realleges the allegations of paragraphs 1 to 20, 29 – 31, 34, 35 and 38, as if fully set forth herein.

40. Main Avenue and Medi Biotech entered into at will oral agreements that were in effect each month from early 2014 to March 2015.

41. Medi Biotech performed all of its obligations under the agreement all conditions precedent to this action, or said performance was waived or excused.

42. Main Avenue breached the agreement by failing to provide facility reports and commission calculations for the time period subsequent to February 29, 2016; by accessing the Medi Biotech portal subsequent to Main Avenue's termination of the "relationship" with Medi Biotech and upon information and belief, transferring to Main Avenue, Medi Biotech's data by failing to pay to Medi Biotech amounts owed for the time period through February 29, 2016 in the sum of $488,611.53 and is liable to Plaintiff for substantial amounts owed subsequent to said date for medications processed and to be processed.

43. Main Avenue's breach has caused damage to Plaintiff as alleged herein.

WHEREFORE, MEDI BIOTECH, LLC, a Florida Limited Liability Company prays for judgment against MAIN AVENUE PHARMACY, INC., a New Jersey corporation, for damages, costs, interest and such other relief this court deems just and proper.

<u>**Count II**</u>
**Breach of Contract (2) – Main Avenue**

44. Medi Biotech incorporates and realleges the allegations in paragraphs 1 to 12, 21 – 28, 24 – 32, 34, 36, and 37, as if fully set forth herein.

45. Main Avenue and Medi Biotech entered into at will oral agreements for the months of October 2015 through March 2016 wherein Medi Biotech would be compensated for marketing in the personal injury and workmen's compensation sector.

46. Medi Biotech performed all of its obligations under the agreement and all conditions precedent to this action, or said obligations were waived or excused.

47. Main Avenue breached the agreement by failing to provide facility reports and commission calculations for the time period subsequent to February 27, 2016; by accessing the

*Medi Biotech, LLC and National Healthcare*
*Services, Inc. v. Main Avenue Pharmacy, Inc.*

Medi Biotech portal subsequent to Main Avenue's termination of the "relationship" with Medi Biotech and upon information and belief, transferring to Main Avenue, Medi Biotech's data, failing to pay to Medi Biotech amounts owed through the filing of this Complaint, and failing to pay all monies now due from date of Main Avenue's unilateral termination of this Agreement, which include compensation due on all future revenues from Plaintiff's marketing.

48. Main Avenue's breach has caused damage to Plaintiff as alleged herein.

WHEREFORE, MEDI BIOTECH, LLC, a Florida Limited Liability Company prays for judgment against MAIN AVENUE PHARMACY, INC., a New Jersey corporation, for damages, costs, interest and such other relief this court deems just and proper.

## Count III
## Unjust Enrichment

49. Medi Biotech incorporates and realleges the allegations in paragraphs 1 to 29, 34, and 38, as if fully set forth herein.

50. Medi Biotech conferred a benefit to Main Avenue in the form of patients for which Defendants received significant revenues from the adjudication of compound medications and other products.

51. Main Avenue accepted the benefit conferred on it by the Defendant.

52. It would be unjust for Main Avenue to retain the benefit without paying Medi Biotech fair value for said services and benefit conferred, as Main Avenue has received and will continue to receive revenues from Medi Biotech's marketing, and Main Avenue has retained said revenues without compensation to Medi Biotech.

WHEREFORE, MEDI BIOTECH, LLC, a Florida Limited Liability Company prays for judgment against MAIN AVENUE PHARMACY, INC., a New Jersey corporation, for damages, costs, interest and such other relief this court deems just and proper.

## Count IV
### Accounting

53. Medi Biotech incorporates and realleges the allegations in paragraphs 1 to 29, 34 - 38, as if fully set forth herein.

54. In accordance with the oral agreements between Main Avenue and Medi Biotech, Plaintiff rendered agreed upon marketing services to Defendant, and Plaintiff's compensation was based upon the revenues of Defendant as a result of said marketing.

55. The calculation of revenues derived by Defendant and fees owed to Plaintiff requires an analysis of extensive or complicated accounts and records of such accounts that are in possession of Defendant.

56. It is not clear that the remedy at law will be a fully adequate and expeditious as it is in equity with regard to the amount of revenues received by the Defendant for calculating of compensation due to Plaintiff.

WHEREFORE, Plaintiff MEDI BIOTECH, LLC, a Florida Limited Liability Company, requests that this Court enter an order for an accounting for Defendant MAIN AVENUE PHARMACY, INC. of the following:

(1) ordering the Defendant to account for all monies received by Defendant from the sale of compound pharmaceuticals and related products;

(2) award to Plaintiff fees and costs to the extent that said fees and costs are available under applicable law; and

(3) granting to Plaintiff such other and further relief as deemed just and proper.

## Count V
### Tortious Interference

57.     National incorporates and realleges paragraphs 1 to 12, and 21 – 34, as if fully set forth herein.

58.     That National and Bon Mar entered into a contract on October 27, 2015 where Bon Mar acted as a non exclusive sales agent for National for a period of one year.

59.     Pursuant to this Agreement, Bon Mar through its president, Seth Leist, provided marketing services for National which in turn was providing services pursuant to an oral agreement for Medi Biotech for Main Avenue.

60.     National agreed to compensate Bon Mar for its marketing in the personal injury and workmen's compensation sector for Main Avenue, and Main Avenue was aware of the agreement between National and Bon Mar, and was aware that Bon Mar had developed leads and customers which were to be used by National to market for Main Avenue.

61.     Subsequent to termination of the relationship between Main Avenue and Medi Biotech on March 11, 2016, Adam Brosius and Main Avenue informed Seth Leist that Main Avenue would no longer be utilizing Medi Biotech or National to market for them and attempted to convince Bon Mar to provide the list of customers developed for National to them and also engage Bon Mar as a marketer to be paid directly by Main Avenue.

62.     Demand was made upon Main Avenue to cease interference with this contract and discontinue their attempts to convince Bon Mar to provide National's leads and customers for Main Avenue's use.

63. Rather than comply with the request Adam Brosius, president of ScripsAmerica, the parent company of Main Avenue, requested a face to face meeting with Seth Leist to pressure him into providing the leads and customers and market for Main Avenue to the exclusion of Main Avenue and National.

64. Upon information and belief, Main Avenue has engaged Bon Mar to market directly for them with National's customers and leads and by their intentional, unjustified and malicious interference, has caused Bon Mar to breach the Marketing Agreement with National.

65. National has suffered damages believed to be in excess of $75,000.00 as the revenues derived from the relationship between National, Medi Biotech, Bon Mar, and Main from October 2015 to February 2016 was in excess of $2,000,000, which include revenues that are being collected and will be collected from prior marketing efforts of National.

WHEREFORE, NATIONAL HEALTHCARE SERVICES, LLC, a Florida Limited Liability Company, prays for a judgment against MAIN AVENUE PHARMACY, INC. for compensatory damages, punitive damages, costs, interest, and such further relief this court deems just and proper including injunctive relief to prevent continued interference.

Dated this 4th day of April, 2016.

> LAW OFFICES OF MARK C. PERRY, P.A.
> Attorney for Plaintiff
> 2400 East Commercial Boulevard, Suite 511
> Ft. Lauderdale, Florida 33308
> Tel. (954) 351-2601
> Cell (954) 351-2605
> Email: mark@markperrylaw.com
>
> By: */s/ Mark C. Perry*
>       Mark C. Perry
>       Fla. Bar No.: 251941

cc: Client